# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:19-cv-00017-KDB-DCK

| | |
|---|---|
| **Travelers Indemnity Company of America,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **Schwarz Properties L.L.C.** **Schwarz & Schwarz, LLC,** | |
| **Defendants.** | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 17). The Court has carefully considered the motion, the parties' related briefs and exhibits and oral argument on the motion from the parties' counsel on February 4, 2020. For the reasons discussed below, the Court will **GRANT** the Motion.

In this action, Plaintiff Travelers Indemnity Company of America ("Travelers") is the subrogee of a commercial tenant who leased space in a warehouse building owned by Defendant Schwartz & Schwartz LLC ("Schwarz"). Travelers seeks to recover against the Defendants for damage caused to the tenant's stored goods when a pipe burst as a result of Defendants' alleged negligence. However, the Court finds that the governing lease agreement (attached to the Amended Complaint) clearly reflects the intent and agreement of the parties that "[a]ny and all goods stored by Lessee on the premises are stored entirely at Lessees own risk!" Moreover, the tenant fully indemnified the Landlord for "all claims, damages and causes of action" related to injury to the tenant's property and specifically agreed that the tenant would "have no right to claim any

1

compensation or reimbursement for any damages suffered by, or alleged to have been suffered or sustained by, any of Lessee's goods while stored on the premises." Accordingly, as a matter of law, tenant's subrogee cannot pursue the claims for negligently caused property damage asserted in this action.

## I.      LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Further, a court is not bound to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002*); see also Miller v. Pacific Shore Funding*, 224 F.Supp.2d 977, 984 n.1 (D. Md. 2002) ("When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or

documents prevail") (*citing Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## II.    FACTS AND PROCEDURAL HISTORY

Defendant Schwarz owns a 3-story warehouse building at 2424 Norwood Street in Lenoir, North Carolina (the "Warehouse" or "Building"). Amended Complaint, Doc. No. 13 at ¶ 4. Beginning on May 1, 2017, CVB, Inc. d/b/a Malouf ("Malouf") leased from Defendant Schwarz Properties the Lower Level of Unit 200 (the ground floor) of the Warehouse for storage of its mattress and bedding stock and business personal property (the "Lease"). *Id*. at ¶ 8. Schwarz Properties is prominently identified at the top of the first page of the Lease as the "Managing Company" for Schwarz, the Building's owner.

In the Lease, Malouf agreed that it could only use the leased premises for "Storage and Warehousing," *see* Lease, Doc. No. 13-1 at ¶ 5, and that it would obtain a general liability insurance policy and an "all risk" property insurance policy for its business property stored in the Warehouse. *See Id.* at ¶ 12. With respect to responsibility for Malouf's property and potential claims for damages, the parties expressly agreed:

> 7. **DESTRUCTION OF LESSEE BELONGINGS DUE TO FIRE OR SIMILAR HAZARD**. Lessee is solely responsible for personal or business contents of leased premises and holds Lessor harmless of any destruction of such property.  It is the sole responsibility of Lessee to obtain insurance for the contents of such premises. If Lessee elects not to obtain such insurance, he is acting solely at his own risk.
> …
>
> **12. INSURANCE; FIRE AND OTHER CAUALTY.**
> (a) … Lessee acknowledges that Lessor will not carry any insurance on Lessee's property and shall not be obligated to repair any damage thereto or replace such items.
> …

3

14. **INDEMNIFICATION**. Lessee shall hold Lessor harmless from and against any and all claims, damages, and cause of action for injury to persons or property arising out of, or caused by, Lessee's use or occupancy of the Demised Premises. Any and all goods stored by Lessee on the premises are stored entirely at Lessees own risk! The parties hereto mutually agree that Lessee shall have no right to claim any compensation or reimbursement for any damages suffered by, or alleged to have been suffered or sustained by, any of Lessee's goods while stored on the premises. Lessee acknowledges and understands that it is Lessee's obligation to maintain insurance on any property of Lessee's stored on the premises; Lessor does not insure Lessee's goods in any way, and shall have no responsibility to Lessee for any damage to or deterioration of Lessee's goods stored on the premises, whether such damage results from fire, flood, windstorm, rain, water damage, hail, sleet, theft, vandalism, or any other cause whatsoever.

The claims in this action arise from a broken pipe that caused extensive water damage at the Warehouse. Amended Complaint at ¶¶ 9, 11-13. Plaintiff alleges that the top two floors of the Warehouse were unoccupied, unheated and had no electric power during the relevant lease period. *Id.* On January 8, 2018, a wet fire sprinkler pipe located in the third floor of the Warehouse accidentally broke during very cold weather causing water to flow out of the pipe and ultimately to the ground floor, resulting in substantial damage to Malouf's mattresses and other property stored in the Warehouse. *Id.* at ¶¶ 17, 23.

Plaintiff blames the rupture of the pipe on Defendants' alleged negligence. Specifically, Plaintiff alleges that Defendants knew or should have known that the second and third floor space(s) should have been heated to at least 40° F, failed to inspect the fire sprinkler system on a yearly basis and did not have the sprinkler system winterized at the onset of freezing weather. *Id.* at ¶¶ 14- 16. Plaintiff further contends that the wet pipe fire sprinkler system as maintained and operated in the unheated and unoccupied portions of the Warehouse failed to meet the requirements of the North Carolina Building Code/ North Carolina Fire Code. *Id.* at ¶¶ 46-47 & 70-71.

After the accident, Malouf made a claim on its Travelers business personal property insurance policy. Travelers paid the claim and then filed this action as Malouf's subrogee on February 15, 2019 to recover against Defendants for Malouf's alleged damages caused by the

broken pipe. In the Amended Complaint, Travelers asserts six counts, three negligence counts against each Defendant (for negligence, negligence per se and gross negligence). *Id*. at ¶¶ 22-41. Defendants in turn move to dismiss all the claims pursuant to the indemnification and exculpatory lease provisions described above.

### III. DISCUSSION

In this action, the parties agree that Plaintiff's claims are governed by North Carolina substantive law, both under the terms of the Lease and as an action filed under the Court's diversity jurisdiction. *See* Lease at ¶23; *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487 (1941). Indeed, Defendants contend that a recent decision of the Supreme Court of North Carolina is controlling on the ability of the Plaintiff to assert negligence claims notwithstanding the clear indemnity provisions in this commercial lease. *See Morrell v. Hardin Creek, Inc*., 371 N.C. 672, 680 (2018). The Court agrees with the Defendant. Applying the teaching and holding of *Morrell* to this action effectively forecloses Plaintiff's claims.

In *Morrell*, commercial tenants brought an action against a landlord, property owner and the property owner's construction company, which allegedly performed a kitchen project that (as alleged here) violated both general building codes and mechanical codes for fire sprinkler systems. The plaintiffs asserted claims for negligence and breach of duty of workmanlike performance against all defendants along with other claims. The North Carolina Supreme Court described the issue presented and its holding as follows:

> [t]he specific question before this Court is whether the pertinent provisions of the lease at issue serve as a complete bar to plaintiff lessees' negligence-based claims against some or all of the named defendants, one of which is the lessor. The language of the lease arrangements indicates the clear intent of the parties to discharge each other from all claims and liabilities for damages resulting from hazards covered by insurance, and it is undisputed that the damages claimed by plaintiff lessees resulted from a hazard that was subject to their insurance coverage. Having elected to enter into the lease at issue here, plaintiff lessees are

> bound by the explicit terms of the contract and therefore are barred from bringing their claims against other parties to whom the lease applies.

Thus, the issue in *Morrell*, as it is here, is "principally a matter of contract interpretation." When the intent of the parties is clearly expressed in a written contract that contains no ambiguities requiring resort to extrinsic evidence or consideration of disputed facts, the contract may be interpreted as a matter of law. *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973). "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citing *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973)).

"The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Morrell*, 371 N.C. at 681, *quoting*, *Gould Morris Elec. Co. v. Atl. Fire Ins. Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948). Although parties may generally contract "to bind themselves as they see fit," "contracts exempting persons from liability for negligence are not favored by the law, and are strictly construed against those relying thereon." *Id.*, *citing Hall v. Sinclair Ref. Co.*, 242 N.C. 707, 709, 89 S.E.2d 396, 397-98 (1955). For this reason, exculpatory clauses will not be "construed as to exempt the indemnitee from liability for his own negligence or the negligence of his employees in the absence of explicit language clearly indicating that such was the intent of the parties." *Hill v. Carolina Freight Carriers Corp.*, 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952). Still, even when the issue before a court is whether an agreement exempts a party from liability for its own negligence, the central question remains the same as in any contract interpretation case: what did the parties intend? "[W]hen the language of the contract and

the intent of the parties are clearly exculpatory, the contract will be upheld." *Gibbs v. Carolina*

*Power & Light Co.*, 265 N.C. 459, 467 (1965).

The *Morrell* court discussed the relevant contract language in detail:

> The language in Paragraph 5(b) in the case at bar cited as exculpatory by defendants … explicitly exempted the parties "from *all claims and liabilities* arising from or caused by *any hazard* covered by insurance on the leased premises ... *regardless of the cause of the damage or loss*." (Emphasis added). Indeed, plaintiffs acknowledge that "this language is broad and expansive enough to encompass a wide range of claims against Hardin Creek," while asserting that "it is that very breadth that makes the clause unable to satisfy the exacting standard under North Carolina law for relieving Hardin Creek from liability for its own negligence." Plaintiffs' chameleonic construction of this contractual language is unworkable. Given the "broad and expansive" nature of the phrase "all claims and liabilities ... regardless of the cause of the damage or loss," it is a challenging exercise to conjure up language in an exculpatory clause that would meet plaintiffs' implied standard for unambiguity regarding waiver of negligence-based claims other than to require such a waiver to explicitly mention the term "negligence." Neither *Winkler* nor any other precedent from this Court, however, requires that a contract expressly include the term "negligence" in order for an exculpatory clause to be enforced in the context of negligence claims. Instead, such provisions must simply contain "clear and explicit words that such was the intent of the parties." *Winkler*, 238 N.C. at 596, 79 S.E.2d at 190 (citation omitted). …
>
> …
>
> This Court cannot creatively interpret the parties' actual lease agreement in the manner urged by plaintiffs, and must instead enforce the parties' intent as evidenced by the clear and explicit language of the lease. *See Dawes v. Nash County*, 357 N.C. 442, 449, 584 S.E.2d 760, 764 (2003) (stating that "courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein" (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978) ) ). The lease executed by plaintiffs and Hardin Creek unequivocally demonstrates the parties' intent to hold each other harmless regarding *all* liability for damage and loss arising from hazards covered by the insurance obtained for the premises. The parties do not dispute that the flooding of plaintiffs' leased premises was a hazard covered by insurance on the premises. … The trial court was correct in finding that Paragraph 5(b) is unambiguous and functions as a complete defense to plaintiffs' claims lodged against Hardin Creek …

*Morrell*, 371 N.C. at 683-86.

The relevant exculpatory language in the Lease in this case is similarly "clear and explicit." Tenant Malouf agreed that "Lessee is solely responsible for personal or business contents of leased premises and holds Lessor harmless of any destruction of such property." Lease at ¶7. Also, Malouf acknowledged that the Landlord would not be carrying "any insurance on Lessee's property and shall not be obligated to repair any damage thereto or replace such items." *Id*. at ¶12. Finally, and most directly, in the Lease's "Indemnification" provision, the parties agreed that:

> Lessee shall hold Lessor harmless from and against *any and all claims, damages, and cause of action* for injury to persons or property arising out of, or caused by, Lessee's use or occupancy of the Demised Premises. Any and all goods stored by Lessee on the premises are stored entirely at Lessees own risk! The parties hereto mutually *agree that Lessee shall have no right to claim any compensation or reimbursement for any damages suffered by, or alleged to have been suffered or sustained by, any of Lessee's goods* while stored on the premises. … Lessor … *shall have no responsibility to Lessee for any damage to or deterioration of Lessee's goods stored on the premises*, whether such damage results from fire, flood, windstorm, rain, *water damage*, hail, sleet, theft, vandalism, *or any other cause whatsoever.*

*Id*. at ¶14. (emphasis added). Malouf thus unambiguously agreed that it would store its goods at its own risk (it was plainly in the best position to properly insure the goods) and would have no right to seek any reimbursement if the goods were damaged for any reason or cause. Accordingly, the Court finds that "… the language of the contract and the intent of the parties are clearly exculpatory," and the contract should be upheld. *Morrell*, 371 N.C. at 680, *quoting*, *Gibbs*, 265 N.C. at 467.

Plaintiff raises several arguments in its effort to avoid the plain language and obvious intent of the parties as expressed in the Lease. First, it argues that its "negligence per se" and "gross negligence" claims do not fall within the scope of the *Morrell* or the exculpatory provisions of the Lease. This is incorrect. In *Morrell*, the plaintiff, like the Plaintiff in this case, asserted claims based on the defendants alleged violation of "both general building codes and mechanical codes

for fire sprinkler systems," which were all found to be within the scope of the parties' agreement that the tenant would forego "any claims."[1] Similarly, the broad exclusionary language in the Lease ("Lessee shall have no right to claim any compensation or reimbursement for any damages") bars negligence claims couched as "gross negligence."[2]

Also, Plaintiff's arguments that its claims do not arise from Malouf's "use or occupancy" of the premises and that a portion of the alleged damages (for "fixtures") fall outside the scope of the exculpatory language can be easily addressed. The indemnification in the Lease applies to all claims "for injury to persons or property," which plainly encompasses all of Malouf's alleged damages. Further, the claims clearly arise out of Malouf's use of the premises. If Malouf had not stored property on the premises there would have been no damages in the first place.

Finally, Plaintiff argues that the exculpatory provisions of the lease do not apply to Defendant Schwarz, the Building owner, because it did not sign the lease. However, it is clear on the face of the lease that Schwarz Properties was acting on Schwarz's behalf as its "Managing Company" in executing the Lease. *See* Lease at p.1.[3] Moreover, Malouf's agreement not to seek reimbursement for property damage was not limited only to claims against the named Landlord. ("Lessee shall have no right to claim any compensation or reimbursement for any damages suffered

---

[1] With respect to Plaintiff's argument that Defendant violated a "safety code" which prevents the application of the parties' clear intent to bar negligence claims, neither this case nor *Morrell* involve an allegation of personal injury arising out of a safety code violation (e.g., leading to a fire), which is a different set of facts on which the Court expresses no opinion.

[2] All of Plaintiffs claims are based on the allegation that the pipe broke accidently in cold weather, even though Plaintiff has alleged various levels of negligent culpability. Plaintiff has not alleged that any of the Defendants *intentionally* damaged Malouf's property. Thus, the Court need not and does not reach the question of whether even broad exculpatory provisions in a contract could protect a defendant from liability for an intentional effort to damage a plaintiff's property.

[3] Further, Plaintiff has not alleged in the Amended Complaint that Schwarz Properties was acting outside the course and scope of its authority as Schwarz's agent in executing the lease.

by, or alleged to have been suffered or sustained by, any of Lessee's goods"). And, of course, it would make little sense to hold that a property owner could not benefit from the indemnifications in a lease under which a tenant could not lawfully use the premises unless the Lease itself had been validly executed either by the owner or an authorized agent. Therefore, the exculpatory provisions of the Lease protect both the Landlord Schwarz Properties and the Building owner Schwarz & Schwarz and must be applied so as to give effect to the Parties' clear intent that the tenant would be responsible for the risk of loss to its property as expressed in the Lease.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

1. Defendant's' Motion to Dismiss (Doc. No. 17) is **GRANTED**;

2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 4, 2020

Kenneth D. Bell
United States District Judge